**HOUFF TRANSFER, Inc. v. UNITED STATES et al.**

Civ. A. No. 312.

United States District Court
W. D. Virginia, at Harrisonburg.

Heard May 28, 1952.

Decided July 15, 1952.

848

Charles A. Nelson, Harrisonburg, Va., and Glenn F. Morgan, Washington, D. C., for plaintiff.

Samuel R. Howell, Asst. Chief Counsel for Interstate Commerce Commission, Washington, D. C., William J. Hickey, Sp. Asst. to the Atty. Gen., Edward M. Reidy, Chief Counsel for Interstate Commerce Commission, Washington, D. C., H. G. Morison, Asst. Atty. Gen., James E. Kilday, Sp. Asst. to the Atty. Gen., and Howard C. Gilmer, Jr., U. S. Atty., Roanoke, Va., for defendants.

Before DOBIE, Circuit Judge, PAUL, Chief Judge, and BARKSDALE, District Judge.

PAUL, Chief Judge.

The plaintiff in this case is a motor carrier in interstate commerce which, operating under the authority of certificates granted by the Interstate Commerce Commission, is engaged in the transportation of various commodities over various routes. For the sake of brevity the plaintiff will hereinafter be referred to as Houff. That portion of plaintiff's operating authority which is of concern in this case gives it the right, over certain routes, to transport "general commodities", with certain exceptions. Among the articles excepted are "explosives and dangerous articles".

Certain other motor carriers engaged in the transportation of petroleum products in bulk, in tank trucks, filed a complaint before the Interstate Commerce Commission against Houff alleging that it was unfairly and illegally competing with them in that Houff was engaged in transporting petroleum products in tank trucks, in excess of and in violation of the operating rights granted to it. And it was prayed that Houff be ordered to cease and desist from such operations. In answer to this charge Houff admitted that it was transporting petroleum products as charged and insisted on its right to do so under its authority to transport "general commodities".

An examiner found that the transportation of petroleum products by Houff, in bulk, in tank vehicles, was unauthorized and recommended the entry of a cease and desist order. On exceptions to the examiner's report the Commission (Division 5), after a hearing, agreed with the examiner's findings and entered its order accordingly. The heart of the controversy was whether the exception of "explosives, and dangerous articles" contained in Houff's certificate prohibited the operations complained of. Apparently Houff urged before the Commission that the words "dangerous articles" were intended to mean dangerous explosives and that "explosives" and "dangerous articles" were in effect, synonyms, from which it argued that it had a right to transport any commodity not classified as an explosive.

The Commission rejected this contention and pointed out that the term "explosives and dangerous articles" was one of long usage in motor carrier operating authorities; that it comprised not only explosives but also other dangerous articles such as inflammable liquids, inflammable solids, oxidizing materials, corrosive liquids, compressed gases, and poisons. The Commission further pointed out that for many years there have been in force regulations governing the transportation of ex-

plosive and dangerous articles and promulgated by the Commission in pursuance of the Congressional direction; and also that over a long period gasoline and certain other petroleum products have been classed as inflammable liquids, although not as explosives.

The Commission's conclusions are summed up in the following language from its report:

"So far as this record is concerned, defendant (Houff) is transporting gasoline, in bulk, in tank vehicles, and perhaps certain other liquid petroleum products although the record is not entirely clear as to the latter. In the Dangerous Articles Regulations, gasoline and certain other petroleum products are classified as dangerous articles. As defendant holds no authority to transport any commodity classified as a dangerous article, its transportation of gasoline, in bulk, in tank vehicles, is unlawful.

\* \* \* \* \* \*

"We find that the certificate issued to defendant in No. MC–66900, insofar as it authorizes the transportation of general commodities, except explosives and dangerous articles, does not authorize defendant to engage in operation as a common carrier by motor vehicle, in interstate or foreign commerce, of *any commodity which is classified as an explosive or as a dangerous article in the Commission's Regulations Governing the Transportation of Explosives and Other Dangerous Articles* \* \* \*." (Emphasis supplied.)

The order of the Commission was:

"That the defendant, Houff Transfer, Incorporated, be, and it is hereby, notified and required to cease and desist, on or before January 15, 1951, from all operations in interstate or foreign commerce of the character *found in the said report to be unlawful and beyond the* scope of authority heretofore granted it." (Emphasis supplied.)

(Note: We have italicized certain wording used in the Commission's report and in its order because of their pertinency to the contentions made before us by the plaintiff in this case.)

Houff has brought this suit, asking us to vacate and set aside the order of the Commission and to enjoin its enforcement. Our right to consider the matter exists under 28 U.S.C. §§ 1336, 1398, 2321–2325. The action of the court is sought upon the grounds that the order of the Commission is unlawful, arbitrary and capricious and is contrary to the controlling statutes and not supported by substantial evidence.

■ Coming to a more specific statement of its objections to the Commission's order the plaintiff, in argument before us, again urges that the term "dangerous articles" means dangerous explosives and that the Commission acted arbitrarily in not so holding. We think it clear that this contention is without merit. When the Commission in its report named various dangerous articles other than explosives, such as inflammable liquids, etc., it is clear that this enumeration stems from the language of the act of Congress, 18 U.S.C.A. § 835, which directs the Interstate Commerce Commission to formulate regulations for the safe transportation of "explosives and other dangerous articles" and which specifically names the articles referred to by the Commission. Furthermore the Commission has had in force for many years regulations in which are listed commodities considered dangerous and in which they are classified as between explosives and various other dangerous articles. The regulation at present in force may be found in Code of Federal Regulations, Title 49, Parts 71–78. This is, of course, a part of the law governing motor carriers and of which they are bound to have knowledge. We might add that, aside from the inferences of the statute and the terms of the regulations, we are certain that explosives are not the only dangerous articles in the world and that the terms are not synonymous.

A further and more earnestly urged contention of the plaintiff relates to the terms of the Commission's report, which finds it unlawful for the plaintiff to transport "any commodity which is classified as an explosive or as a dangerous article in the Com-

mission's Regulations Governing the Transportation of Explosives and Other Dangerous Articles * * *." Against this action of the Commission the plaintiff offers two attacks. He insists, first, that the report and the supporting order, in forbidding the transportation of any article named in the regulations as explosive or dangerous, went far beyond the issue before the Commission which concerned only the transportation of petroleum products, in bulk, in tank vehicles.

Secondly, the plaintiff urges that the Commission's regulations listing explosives and dangerous articles contain many hundreds of articles which are customarily transported by motor carriers under their "general commodities" authority and which are common articles of commerce. And that if the plaintiff is barred from handling any of the articles so listed the result is to require a substantial reduction in the number and kind of articles which the plaintiff may transport; that the effect will be an arbitrary and unlawful revocation of a portion of the rights granted plaintiff, an action which the Commission is without authority to take.

 As to the charge that the Commission went beyond the issue before it: It is true that the charge made against the plaintiff was that it was transporting "petroleum products, in bulk, in tank trucks." And it appears to be true that on the hearing the proof was limited to the hauling of gasoline. To quote from the Commission's report: "So far as this record is concerned, defendant is engaged in transporting gasoline, in bulk, in tank vehicles, and perhaps certain other liquid petroleum products although the record is not entirely clear as to the latter." The report then continues: "In the Dangerous Articles Regulations, gasoline and certain other petroleum products are classified as dangerous articles. As defendant holds no authority to transport any commodity classified as a dangerous article, its transportation of gasoline, in bulk, in tank vehicles, is unlawful."

Plaintiff's contention is that the order of the Commission goes beyond the definite finding in the language above quoted. We

have no doubt of the power of the Commission to enter the order in the terms embraced in it. It is to be noted that Houff was contending that it had the right to transport gasoline under its "general commodities" authority and that in determining what were dangerous articles under the exception in its authority it was not bound by the Dangerous Articles Regulations because its certificate made no specific reference to the regulations. The Commission held in effect that gasoline was a dangerous article, that it was so classified in the regulations, and that defendant was bound by these regulations and was without authority to transport any commodity which by the regulations was classified as dangerous. It would seem, therefore, that it was proper and appropriate that the order should have been in terms that made it clear to the plaintiff that the regulations applied to it and that it was without authority to haul, not only gasoline, but any article which had been classified as dangerous in the Commission's regulations.

Plaintiff further contends that the effect of the Commission's ruling is to revoke a substantial portion of its certificate in that it bars plaintiff from transporting many articles ordinarily transported by carriers under their "general commodity" authority. As to this it may be said, first of all, that plaintiff does not have unlimited "general commodities" authority. Its authority is expressly limited by excluding the right to haul explosives and dangerous articles.

 The plaintiff argues that the regulations of the Commission cannot be used to define the term "dangerous articles" as contained in plaintiff's certificate, because the certificate does not refer to the regulations. From this argument the inference seems to be that the plaintiff itself shall determine what articles are explosive and dangerous. We cannot accept this view. When Congress recognized the fact that there were many commodities the transportation of which was fraught with danger and directed the Commission to formulate regulations governing their transport, it specifically provided, 18 U.S.C.A. § 835, that regulations so adopted should be binding upon all carriers. It is true that the

statute refers to the formulation of regulations for the *safe transportation* of explosives and dangerous articles, but we think that this necessarily implies the power and the necessity of determining what articles are explosive or dangerous. It is obvious that this determination should be made by the Commission which has at its command the scientific and technical knowledge to make it; that it is not to be left to the determination of each individual motor carrier.

If we have understood the plaintiff's position correctly, it is also its contention that the list of commodities classified in the regulations as explosive or dangerous contains many articles that are in fact neither explosive or dangerous and the transportation of which involves no danger. In oral argument counsel stated that there were 2,000 or more articles named on the Commission's explosives or dangerous articles list, many of which are harmless, and urged that an order which broadly prohibited it from hauling anything on this list was unreasonable, arbitrary and unlawful. It seems that what the plaintiff seeks is to have this court review the list of dangerous articles set out in the regulations and to limit the effect of the Commission's order to those articles which the court shall determine to be dangerous. This wholesale review of the regulations with a view to their amendment is clearly not the function of the court. It is equally clear that the court is not competent to make it. We have examined the list of explosives and other dangerous articles appearing in the Code of Federal Regulations, Title 49, Part 72, Sect. 72.5, and while we have not undertaken, by a count, to verify counsel's estimate of the number of articles listed, a cursory examination of the list clearly shows that its revision should not be attempted by this court. With all humility we admit that we would not feel competent to say that the Commission is plainly in error in determining, for example, that *Dichlorodifluoromethane* and *difluoroethane mixture* and *Testiary butylisopropyl benzene hydroperoxide* are dangerous articles to transport.

So far all that has been proven against the plaintiff is that he transported gasoline which, we agree, he was not authorized to transport. Further than that we decide only that it is not our function to supervise and amend the Commission's complete list of explosives and dangerous articles under a mere general attack on its accuracy.

We do not mean to say that under no circumstances could an order of the Commission be attacked as unreasonable and arbitrary where it forbids the transportation, as dangerous, of some article conclusively proven to be harmless. A decision as to whether a court has power to intervene in such a situation must wait until the question arises.

The petition of the plaintiff to vacate and set aside the order of the Commission is denied and the plaintiff's action is dismissed.